UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:04-CV-742-H

BRUCE FRIEDRICH and
ALKA CHANDNA                                                                              PLAINTIFFS

V.

CITY OF ANCHORAGE,                                                                       DEFENDANTS
GARY BURKHEAD, and
CHRIS L. WINDERS

**MEMORANDUM OPINION**

Plaintiffs Bruce Friedrich and Alka Chandna have brought this action pursuant to 42 U.S.C. § 1983 and the Kentucky Constitution against Defendants the City of Anchorage, Officer Gary Burkhead in his official and individual capacities, and Chief Chris L. Winders in his official and individual capacities for violation of the equal protection clause.  Specifically, Plaintiffs bring claims of selective enforcement, malicious prosecution,[1] and supervisory and municipal liability.  Defendants have moved for summary judgment on all of Plaintiffs' claims. The Court will consider each in turn.

I.

On December 25, 2003, Plaintiffs were cited for criminal trespassing on the property of Jonathan Blum, a Yum! Corporation executive.  Plaintiffs are animal rights activists and members of People for the Ethical Treatment of Animals ("PETA"), an animal rights

---

[1] Plaintiff Friedrich brings only the selective enforcement and supervisory liability claims.

organization. In early 2003, PETA began a campaign addressing Kentucky Fried Chicken ("KFC") and its treatment of chickens. Plaintiff Friedrich and other PETA representatives met in New York with certain Yum! representatives regarding PETA's concerns a few weeks before the incident at issue. On December 25, 2003, Plaintiffs intended to visit the homes of certain high-ranking Yum! executives, which are located in the City of Anchorage (the "City"). Plaintiffs intended to attempt to engage the Yum! executives in a discussion concerning what they believed to be animal abuse perpetrated by KFC suppliers. Plaintiffs "believed the holiday season might be an especially auspicious time to reach the hearts of Yum! executives." Pls' Mem. in Opp'n to Def's Mot. for Summ. J. at 2. In furtherance of their goal, Plaintiffs intended to engage in a "lighthearted piece of theatre," by delivering small bags of coal to the Yum! executives to indicate that they had been "naughty," rather than "nice." *Id*.

Prior to December 25, 2003, David Novak and Jonathan Blum, both Yum! executives, had placed their houses on the Anchorage Police Department (the "Department") "house-watch" list. The City's "house-watch" program affords residents the opportunity to have their houses checked by the Department while they are away. To be on the "house-watch" list, residents notify the Department that they will be away and provide a list of approved visitors and vehicles. When a residence is on house-watch, all officers on duty are required to drive by and check each residence on the list.

On the afternoon of December 25, 2003, Plaintiff Friedrich, dressed as Santa Claus, and Plaintiff Chandna, dressed as an elf, traveled to the Novak residence for the aforementioned purpose. At the Novak residence, a private security guard told Plaintiffs to leave the property, and Plaintiffs complied. The security guard contacted the Department and informed the

dispatcher that he had just turned two members of PETA away from the Novak residence and provided a description of the Plaintiffs and their vehicle. The dispatcher broadcast this information to Officer Burkhead, who was on duty that day. After leaving the Novak residence, Plaintiffs traveled in the direction of the Blum residence and passed Officer Burkhead going the opposite direction. Plaintiff Chandna waved to Officer Burkhead. Officer Burkhead recognized the vehicle from the description given by the dispatcher and turned his vehicle around and followed Plaintiffs until they entered the driveway leading to the Blum residence and drove past a "No trespassing" sign, at which point he turned on his emergency lights and stopped Plaintiffs.

Officer Burkhead asked Plaintiffs for identification, and asked why they were there. Officer Burkhead approached the vehicle and told Plaintiffs they were trespassing. Plaintiffs offered to leave the premises several times but were not permitted to do so. During the encounter, Anchorage city attorney John McGarvey arrived at the scene[2] and consulted with Officer Burkhead. Officer Burkhead cited Plaintiffs for criminal trespass in the third degree, under Ky. Rev. Stat. Ann. § 511.090. Plaintiffs were then released and were not handcuffed or taken into custody. Following a jury trial in Jefferson District Court, Plaintiff Friedrich was found guilty on the criminal trespass charges and fined $25, and Plaintiff Chandna was acquitted. Plaintiff Friedrich's conviction was affirmed by the Jefferson Circuit Court, and the Kentucky Court of Appeals denied discretionary review. Plaintiff Friedrich is currently seeking discretionary review in the Kentucky Supreme Court.

---

[2] McGarvey was not called to the scene by the police. He became aware of the situation and went to the Blum residence of his own accord.

II.

Summary judgment is proper only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The Court views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The moving party "must establish that there are no genuine issues of material fact and that the evidence, when read in the light most favorable to the nonmoving party, compels a ruling in favor of the moving party." *Hammon v. DHL Airways, Inc.*, 165 F.3d 441, 447 (6th Cir. 1999).

III.

Plaintiffs bring their claims for violation of their Fourth Amendment rights under 42 U.S.C. § 1983.[3] To succeed on a claim under section 1983, Plaintiffs must prove both that the conduct complained of was committed by a person acting under the color of state law and that the conduct deprived the Plaintiffs of rights, privileges, or immunities guaranteed by the Constitution or the laws of the United States. *Bennett v. City of Eastpointe*, 410 F.3d 810, 817 (6th Cir. 2005) (citing *McKnight v. Rees*, 88 F.3d 417, 419 (6th Cir. 1996)). There is no debate here that Officer Burkhead was acting under the color of state law. Rather, the issue is whether

---

[3] Plaintiffs also raise a state law claim under Section Two of the Kentucky Constitution, which similarly prevents arbitrary discrimination in law enforcement. *See Board of Education of Ashland v. Jayne*, 812 S.W.2d 129 (Ky. 1991) (test is whether the complained of decision is based on a constitutionally impermissible reason). As the state law standard is essentially identical to the federal one, the Court will analyze the state law claim under the framework provided by the federal cases. However, the Kentucky Supreme Court in *Jayne* decided that "the issue of constitutionality is a *legal* one, and should only be decided by a Court." *Jayne*, 812 S.W.2d at 132. Accordingly, the Court will decide the state law claim following the close of proof at trial.

4

the Plaintiffs suffered a violation of their constitutional rights.

Plaintiffs claim that Officer Burkhead violated the Equal Protection Clause of the Fourth Amendment when he selectively enforced the criminal trespass statute against them because of their membership in and support of PETA.[4] In order to prevail on a selective enforcement claim, Plaintiffs must show that the challenged police action (here, the issuance of the citation) "had a discriminatory effect and that it was motivated by a discriminatory purpose." *Bennett v. City of Eastpointe*, 410 F.3d 810, 818 (6th Cir. 2005) (citing *Wayte v. United States*, 470 U.S. 598, 608 (1985)). To prove discriminatory effect, Plaintiffs can show evidence that similarly situated persons who were not members of PETA were treated differently, through statistical evidence or by identifying a specific non-member of PETA who the police treated differently. *United States v. Armstrong*, 517 U.S. 456, 465 (1996). To show discriminatory purpose, Plaintiffs can provide evidence that "an official chose to prosecute or engage in some other action at least in part because of, not merely in spite of, its adverse effects upon an identifiable group." *Wayte*, 470 U.S. at 610 (internal citations omitted).

In support of the discriminatory effect prong, Plaintiffs point to the testimony of Chief Winders that he is unaware of any citations for third degree criminal trespass being issued since he joined the Department in December 2000. In addition, Chief Winders stated that he is aware of instances "where there have been issues with solicitors that people didn't want on their property or who [police] officers thought shouldn't be on certain property," but that no citations

---

[4] There is no debate that Plaintiffs have a right under the First Amendment to be members and supporters of PETA. Whether the Plaintiffs actually had a First Amendment right to be on the property of Mr. Blum is an entirely separate question that the Court need not resolve. Even if Plaintiffs had no right to be on the property of Mr. Blum, it would be impermissible to cite them for trespassing *because of* their membership in PETA as opposed to citing them for specific conduct in which they engaged.

5

were issued in those instances. In response, Defendants argue that Plaintiffs simply have not provided enough evidence of a similarly situated individual being treated differently than they. Here, a similarly situated individual would be a person knowingly engaging in targeted unwelcome advocacy to a particular individual or individuals rather than a door-to-door solicitor, even an especially persistent one. Although the evidence on this point does not clearly indicate that any of the prior incidents involved persons similarly situated to the Plaintiffs, the Court must draw all inferences in the Plaintiffs' favor. Accordingly, the Court infers from the evidence that at least one of those incidents involved a similarly situated individual acting as the Plaintiffs did – that is, an individual who appeared to have knowingly entered a particular person's property without license or privilege to do so – and not being issued a citation.

To show discriminatory intent, Plaintiffs point to the testimony of Officer Burkhead that if Plaintiffs had been on a book drive, or a food drive, or with a religious group, he would have advised them to "get on down the road" or "move on," rather than cite them for trespassing. Officer Burkhead also testified that he would have "just let them go" if Plaintiffs had been with the Jehovah's Witnesses or Boy Scouts. Defendants argue that Officer Burkhead's statements are being taken out of context, and that what he meant is that he would not have cited people who were engaging in door-to-door solicitation, even if they were abnormally persistent. Plaintiffs also note that Chief Winders wrote on their citations that each was a member of PETA and the resident (Mr. Blum) was a Yum! employee. The Defendants argue that this was merely a description of the situation, not that Plaintiffs' membership in PETA was a reason for the

citation. While both of Defendants' arguments may be true,[5] for the Court to assume so from the evidence requires it to draw an impermissible inference in the Defendants' favor. The Court has serious doubts as to whether the Plaintiffs will be able to prove either prong of their selective enforcement claims at trial. A lot of the evidence may suggest that Plaintiffs intended to be arrested and that Defendants knew of their intent to trespass. Plaintiffs may have intended to harass more than to protest. Nevertheless, the Court is unable to resolve the claim as a matter of law at this stage. Accordingly, Plaintiffs' selective enforcement claims remain.

IV.

Plaintiff Chandna also brings state and federal claims for malicious prosecution. In order to succeed on the state claim, she must establish the following elements: (1) institution or continuation of judicial proceedings such as a criminal prosecution, (2) by, or at the encouragement of Defendant, (3) termination of such proceedings in Plaintiff's favor, (4) malice in the institution of the proceeding, (5) want or lack of probable cause for proceeding, and (6) suffering of damage as a result of the proceeding. *Dean v. Earle*, 866 F. Supp. 336 (W.D. Ky. 1994) (citing *Raine v. Draisin*, 621 S.W.2d 895, 899 (Ky. 1981)). Although the elements of the federal malicious prosecution claim have not been fully defined in the Sixth Circuit, it is clear

---

[5] There is case law suggesting that describing someone as a member of a group does not equate with intent to enforce the law against them because of that membership. *See, e.g., United States v. Hastings*, 126 F.3d 310 (4th Cir. 1997) (Internal Revenue Service documents describing defendant as a prominent Republican did not indicate intent by prosecutor to enforce the criminal tax laws against defendant based on his political affiliation). In addition, it is clear that any animus of Yum! toward PETA cannot be imputed to the Defendants. *See Brazos Valley Coalition for Life, Inc. v. City of Bryan*, 421 F.3d 314, 326 (5th Cir. 2005) (citing *Zelman v. Simmons-Harris*, 536 U.S. 639, 649-53 (2002)). Plaintiffs have not argued under a "heckler's veto" theory, and the Court believes such an argument would be inappropriate on these facts, as there is no evidence that a complaint by a Yum! employee was made at or near the time of the incident. Rather, both Yum! employees had indicated that only certain individuals were permitted to be on their properties, and Plaintiffs were not on the approved list. *Cf. Gaughan v. City of Cleveland*, 2005 WL 3216269 (N.D. Ohio 2005) (court analyzed selective enforcement claim under heckler's veto theory where abortion clinic employee complained about noise made by anti-abortion protestor outside the clinic and police officer issued citation to protestor shortly thereafter).

that Plaintiff Chandra must show, at a minimum, that there was no probable cause to justify the citation. *Thacker v. City of Columbus*, 328 F.3d 244, 258-59 (6th Cir. 2003).

Defendants have argued that the claim must be dismissed because there was probable cause for the citation. The Court agrees. Plaintiff Chandna entered the property of Mr. Blum, and Officer Burkhead had knowledge that her presence was unwelcome and that she had just been turned away from the Novak residence. The fact that the she was ultimately acquitted of the trespassing charge does not change the Court's view that Officer Burkhead had probable cause to cite the Plaintiff for trespassing, and the fact that the case was tried to a jury rather than dismissed is in fact further evidence that the initial citation was based on probable cause. Accordingly, Plaintiff Chandna's malicious prosecution claims fail.

V.

Plaintiffs seek to hold Chief Winders liable under section 1983 based on his role in supervising Officer Burkhead, who allegedly committed the constitutional violation. For Plaintiffs to succeed on this claim, they must show more than simply Chief Winders' right to control Officer Burkhead – they cannot succeed solely on a theory of *respondeat superior*. *Bennett*, 410 F.3d at 818 (citing *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)). Rather, Plaintiffs must show, at a minimum, "that a supervisory official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending subordinate." *Id.* Here, Plaintiffs analogize to *Bennett*, in which a police lieutenant issued a memorandum that arguably promoted racially discriminatory acts of officers. Specifically, in *Bennett*, the memorandum said "[m]y instructions to the officers were to investigate any black youths riding through our subdivisions . . . ." Plaintiffs argue that the situation in this case is

8

similar, because Chief Winders testified that he received communications approximately every two months from Pete Leguens, a member of the Yum! security team, informing the Department of Yum! security concerns, including PETA visits to the area. One of the Yum! memos was sent a few days prior to December 25, 2003, informing the Department that PETA would be in the area on Christmas Eve. Chief Winders apparently posted this memo on the Department bulletin board.

Plaintiffs argue that this posting authorizes discriminatory treatment against PETA members and therefore confers supervisory liability on Chief Winders. The Court does not agree. It is clear that Yum! and PETA have differences of opinion regarding animal treatment, and it is clear that these differences provide the basis for potential confrontations between the members of those respective groups. A responsible police officer would certainly want his officers to be aware of such a controversy, and Chief Winders' testimony is that he in fact affirmatively informed his officers that their job was to avoid problems between the two groups, meaning "that PETA, their rights were respected as far as doing what they legally could do and our residents' rights were being respected as far as being secure in their own property." The posting of memos indicating PETA's presence in the vicinity, without more, is not evidence that Chief Winders implicitly authorized, approved, or acquiesced in discrimination against PETA members. Accordingly, Plaintiffs' claims for supervisory liability fail.

VI.

Finally, Plaintiffs bring claims for municipal liability against the City of Anchorage. As with a supervisor, a municipality may not be held liable under section 1983 simply on the theory of *respondeat superior*. *Bennett*, 410 F.3d at 818 (citing *Monell v. Dep't of Social Servs,*, 436

9

U.S. 658, 691 (1978)). Rather, a municipality may be held liable only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Monell*, 436 U.S. at 694. Plaintiffs base their claim for municipal liability on Chief Winders' role as "an admitted final decision maker for the city." As the Court has determined there is no supervisory liability for Chief Winders, there can be no municipal liability for the City. Plaintiffs' claims for municipal liability therefore fail.

The Court will enter an order consistent with this Memorandum Opinion.

cc: Counsel of Record